## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2018, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth A. Johnson
Marion County Public Defender
Indianapolis, Indiana

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR GUARDIAN AD LITEM

DeDe K. Connor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Involuntary Termination of the Parent-Child Relationship of N.L. (Minor Child), and

J.L. (Father),

*Appellant-Respondent,*

v.

May 11, 2018

Court of Appeals Case No.
49A05-1712-JT-2759

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Scott B. Stowers, Magistrate

Trial Court Cause No.
49D09-1606-JT-657

The Indiana Department of
Child Services,

*Appellee-Petitioner,*

   and

Child Advocates, Inc.,

*Appellee-Guardian ad Litem.*

**Bailey, Judge.**

# Case Summary

[1]   J.L. ("Father") appeals[1] the trial court judgment terminating his parental rights to his child, N.L. ("Child"). He raises one issue on appeal, which we restate as whether the trial court clearly erred when it terminated his parental rights.

[2]   We affirm.

# Facts and Procedural History

[3]   Child was born on May 16, 2012, and lived with Mother and Child's siblings. Father[2] lived elsewhere.

---

[1] Child's Mother, J.G., ("Mother") signed a consent for Child to be adopted. Mother does not participate in this appeal.

[2]   Although the record does not disclose how Father established his paternity as to Child, the trial court found—and it is undisputed—that Father is the biological Father of Child. Appellant's App. Vol. II at 31.

[4] On September 11, 2012, Father was charged with Strangulation, as a Class D felony; Domestic Battery, as a Class D felony; Domestic Battery, as a Class A misdemeanor; and Battery, as a Class A misdemeanor. On December 6, Father pleaded guilty to Battery, as a Class B misdemeanor, and all of the other charges were dismissed. Father was sentenced to 180 days, with credit for ten days and 170 days suspended to probation.

[5] Beginning in October of 2013, Father lived with his girlfriend, R.M. ("Girlfriend"), and her two daughters in Danville. In July 2014, Child began living with Father and Girlfriend after Mother agreed to place Child with Father under a temporary guardianship arrangement.

[6] On March 9, 2014, Father was charged with Operating a Vehicle While Intoxicated Endangering a Person (Cause No. 32C02-1506-CM-780). On April 28, 2015, Father was again charged with Operating a Vehicle While Intoxicated Endangering a Person (Cause No. 32C01-1505-CM-542). Father was released on bond while both charges were pending. DCS Exhibit 24 at 1; Exhibit 28 at 1.

[7] On May 15, 2015, the Indiana Department of Child Services ("DCS") filed a child in need of services (CHINS) petition alleging that: Mother admitted to using methamphetamine for approximately two years; she had untreated mental health issues and unstable housing; and Father was unable to ensure Child's safety while Child was in Mother's care. On the same day, the court

held an initial hearing and authorized Child's removal from Mother's care and placement with Father for a temporary trial home visit (TTV).

[8] On July 16, 2015, Girlfriend obtained a no-contact protective order against Father due to his drunken, belligerent, and threatening behavior toward her and her two daughters. Exhibit Vol. I at 32. On the evening of that same day, Father drove away from the home with Child in the car. *Id*. He returned to the home a short time later and was served with the no-contact order; however, the police would not allow Father to drive away at that time due to his intoxication. *Id*.

[9] On July 18, Father was arrested and charged with Invasion of Privacy, as a Class A misdemeanor, after he violated the no contact order (Cause No. 32C01-1507-CM-873). Upon his arrest, Father left Child with Girlfriend to be cared for in her home. On July 20, DCS requested the removal of Child from Father's care due to Father's arrest and allegations that he drove under the influence on July 16 with Child in the car. On July 21, the court removed Child from Father's care and placed Child with his maternal grandmother ("Grandmother"). Father remained incarcerated for approximately the next two weeks, but was then released on bond.

[10] At a September 18, 2015, pretrial hearing in the CHINS case, Father waived his right to a factfinding hearing and Child was adjudicated a CHINS. On the same day, the court proceeded to a dispositional hearing and entered a dispositional decree and parental participation order requiring Father to

participate in services, including substance abuse assessment and treatment. In late September, DCS referred Father to Hamilton Center for a substance abuse assessment, but Father did not obtain the assessment.

[11] On September 29, Father was arrested and charged with Operating a Vehicle While Intoxicated Endangering a Person, as a Class A misdemeanor, and Driving While Suspended, as a Class A misdemeanor (Cause No. 32C01-1509-CM-1223). On April 4, 2016, Father pleaded guilty to the following charges pending in his four separate criminal cases:[3] Invasion of Privacy and three counts of Operating a Vehicle While Intoxicated Endangering a Person. Father was sentenced accordingly and remained incarcerated for approximately thirteen months, until November 4, 2016.

[12] On May 16, 2016, the court held a permanency hearing at which it noted that Father was still incarcerated. At the request of DCS, the court changed Child's permanency plan to adoption. On June 3, 2016, DCS filed a petition to terminate parental rights as to Child. At a December 9, 2016, permanency hearing in the CHINS matter, the court noted that Mother had executed an adoption consent for Child, and Father had been released from incarceration. The court ordered Father to complete a substance abuse assessment and random drug screens, and it authorized Father to have therapeutically

---

[3] I.e., Cause No. 32C02-1506-CM-780 (March 9, 2014 charges); Cause No. 32C01-1505-CM-542 (April 28, 2015 charges); Cause No. 32C01-1507-CM-873 (July 18, 2015 charges); and Cause No. 32C01-1509-CM-1223 (September 29, 2015 charges).

supervised parenting time with Child. On December 29, DCS referred Father to a substance abuse assessment, therapy, and random drug screens. DCS never received any documentation from the service providers that Father had participated in those services.

[13] On January 17, 2017, Father was arrested and charged with the following: Operating a Vehicle While Intoxicated: Endangering a Person, as a Class A misdemeanor; Operating a Vehicle While Intoxicated: Endangering a Person, as a Level 6 felony; Operating Vehicle After Being Habitual Traffic Offender, a Level 6 felony; Pointing a Firearm at Another, as a Level 6 felony; Intimidation, as a Level 6 felony; Operating a Vehicle with a ACE of .15 or more, as a Class A misdemeanor; and Operating a Vehicle with a ACE of .15 or More but where Defendant has a Prior Conviction, a Level 6 felony (Cause No. 32C01-1701-F6-56). On April 13, the pointing a firearm and intimidation counts were dismissed. At the time of the termination hearing, Father was still incarcerated and a jury trial was pending for October 17, 2017.

[14] On October 11, 2017, the court held a trial on the termination petition. DCS presented evidence that Child had been placed with Grandmother since July 2015, and that Child has not seen Father in all that time. Both Family Case Manager (FCM) Teonna Branson ("FCM Branson") and Guardian ad Litem (GAL) LeShell Bartlett ("GAL Bartlett") testified that Child was doing well in his placement with Grandmother and that he was happy. FCM Branson testified that Child does not like change and, when change happens, Child starts to display bad behaviors.

Both FCM Branson and GAL Bartlett testified that they believed termination of Father's parental rights was in Child's best interest because Child needs stability and a permanent home. Neither FCM Branson nor GAL Bartlett believed Father should be given additional time to participate in services because he had completely failed to obtain any services in the two-plus years he had already been given. Both noted that Father continues to be repeatedly incarcerated and Child needs stability.

DCS's plan for Child's care and treatment is adoption by Grandmother and her husband, with whom one of Child's biological siblings also lives. FCM Branson testified that Grandmother was not willing to consider guardianship, but wanted to adopt Child. GAL Bartlett testified that adoption was a satisfactory plan for the care and treatment of Child.

On November 8, 2017, the court issued its order terminating Father's parental rights to Child and entered the following findings:

> Upon evidence presented, the Court now finds by clear and convincing evidence:
>
> 1. [Father] is the father of [Child], a minor child.
>
> 2. [Child] was born on May 16, 2012, and is presently five (5) years of age.
>
> 3. [Mother] is the child's biological mother. She has signed adoption consents and has been dismissed from this termination action.

4. A Child in Need of Services ("CHINS") Petition was filed under Cause Number 49D091505JC001630, on or about May 15, 2015, following allegations that [Child's] mother was abusing methamphetamine and had untreated mental health issues and unstable housing.

5. The child was initially removed from [M]other's custody and placed with [Father] and [Father] intended to file for a change of custody.

6. On or about July 16, 2015, an incident occurred in which the child was left with [Father]'s then-girlfriend who obtained a Protective Order against [Father]. [Father] violated the Protective Order two days later by appearing at the home intoxicated and pounding on her bedroom window demanding entry.

7. At a July 21, 2015 "Detention Hearing," the CHINS Court removed the child from the care of Father and ordered the child to be placed with his maternal grandmother.

8. On September 18, 2015, the Child was adjudicated to be a CHINS as to [F]ather, when [Father] waived his right to a "factfinding hearing."

9. Also on September 18, 2015, the CHINS Court proceeded to disposition as to [Father], and he was ordered to undergo a Substance Abuse Assessment and follow all treatment recommendations.

10. In September 2015, then FCM Tom Heath referred [Father] for a Substance Abuse Assessment at the Hamilton Center in Hendricks County. However, shortly thereafter, [Father] was

arrested for Operating a Vehicle while Intoxicated, and the service has not been completed.

11. During the pendency of the CHINS case, [Father] has been in and out of jail, and has been incarcerated continually since January 2017. He has not sent any letters or correspondence to the child while incarcerated. On or about April 4, 2016, [Father] entered into a plea agreement in Hendricks County, in which he pled guilty to Invasion of Privacy; and three counts of Operating a Vehicle While Intoxicated (endangerment).

12. During the periods of time he was not incarcerated, [Father] did not reach out to the FCM for services, nor did he seek out parenting time with the child. Between November 2016 and January 2017, [Father] was released from jail and did not see the child during that time.

13. [Father] has not seen his child since July 2015.

14. [Child] has been removed from his father's care and custody under a dispositional decree for at least six (6) months prior to this termination action being filed on June 3, 2016.

15. The child has been placed in relative care with Maternal Grandmother since his removal from Father's custody in July 2015. This is a preadoptive placement. The child is happy and doing well. He is well-bonded with the relative caregiver. There are no safety concerns and a biological sibling is also in the home.

16. The present FCM Teonna Branson has not referred any new services for [Father]. However, the previously ordered services of Substance Abuse Assessment and Random Drug Screens remain open.

17. There is a reasonable probability that the conditions that resulted in the child's removal will not be remedied by his father. [Father] has had over two years and has not addressed his issues. Sobriety and stability remain major concerns. Even during the periods of time in which he was not incarcerated, he has failed to avail himself of any services or parenting time. During his periods of incarceration, he has not participated in any programs which would improve his life.

18. Continuation of the parent-child relationship poses a threat to the child's well-being in that it would serve as a barrier to obtaining permanency for him through an adoption when his father is unable and unwilling to offer him permanency and parent[ing]. The child has been in preadoptive relative care for over two years. The child likes stability and doesn't like change. He no longer talks about his father.

19. Termination of the parent-child relationship is in the best interest of the child. Termination would allow him to be adopted into a stable and permanent home where his needs will be safely met.

20. There exists a satisfactory plan for the future care and treatment of the child, that being adoption.

21. The Guardian ad Litem agrees with the permanency plan of adoption as being in the child's best interests.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the parent-child relationship between [Child] and his father [Father] is hereby terminated. All rights, powers, privileges, immunities, duties and obligations, any rights to custody, parenting time or support, pertaining to the relationship are permanently terminated, including the need to consent to adoption.

Appellant's Appendix, Vol II, at 31-34. This appeal ensued.

# Discussion and Decision

## Standard of Review

[18] Father maintains that the trial court's order terminating his parental rights was clearly erroneous. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Office of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[19] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.
>
> * * *
>
> (C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2) (2016). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id*. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[20] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Office of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.

*Judy S. v. Noble Cty. Office of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). *trans. denied*.

[21]  Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[22]  Father does not challenge the trial court's findings of fact. Rather, he contends that the trial court erred in its conclusions of law. Specifically, he alleges that the trial court erred in concluding that he will not remedy the conditions that resulted in Child's removal and that the continuation of the parent-child relationship poses a threat to the well-being of Child. He also challenges the trial court's conclusions that termination is in the best interests of Child and that DCS has a satisfactory plan for Child's care. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we address only whether the trial court erred in concluding that Father's continued relationship with Child poses a threat to Child's well-being, that termination is in Child's best

interests, and that there is a satisfactory plan for Child's care. *See Aikens v. Ind. Dep't of Child Servs. (In re I.A.)*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009).

## Continuation of the Parent-Child Relationship

[23] Father contends that the trial court's conclusion that continuation of the parent-child relationship would pose a threat to Child is not supported by the evidence. However, Father's arguments are simply requests that we reweigh the evidence, which we cannot do. *Peterson v. Marion Cty. Office of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we must determine whether the evidence most favorable to the judgment supports the trial court's conclusion. *Id.*; *Quillen*, 671 N.E.2d at 102.

[24] A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. *Shupperd v. Miami Cty. Div. of Family & Children (In re E.S.)*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). The evidence need not reveal that the continued custody of the parent is wholly inadequate for the child's very survival; rather, it is sufficient to show that the child's emotional and physical development are threatened by the parent's custody. *B.A. v. Ind. Dep't of Child Servs. (In re C.A.)*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014). Moreover, it is appropriate for the trial court to consider the parent's history and patterns of behavior—including a history and/or pattern of repeated incarcerations—when determining whether there is a

substantial probability of future threat to the child's well-being. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014).

[25] Here, the trial court's conclusion is supported by the following evidence. Father drove while intoxicated with Child in the car. He was subsequently arrested, convicted, and incarcerated multiple times for driving while intoxicated, and, at the time of the termination hearing, he was incarcerated on three additional driving while intoxicated charges. Father has been in and out of jail for Child's entire life. Father has not seen, or attempted to see, Child since July 2015, even during the brief periods when Father was not incarcerated. Despite his history of alcohol abuse and criminal convictions related thereto, Father has never attempted to obtain substance abuse treatment. In fact, Father has obtained none of the services ordered by the court, nor has he participated in any programs to improve his life while incarcerated. While incarcerated, Father did not attempt to contact Child. Given Father's repeated incarcerations, failure to seek substance abuse treatment, and failure to see or contact Child over the last two-plus years, both the FCM and the GAL in this case testified they believe Father should not be allowed additional time to obtain services before his parental rights are terminated. All of this evidence clearly supports the trial court's conclusion that continuation of the parent-child relationship would pose a threat to Child. [4]

---

[4] Because we find the continued relationship with Father would pose a threat to Child, we do not address whether Father has remedied the reasons for removal. However, given his continued pattern of driving while

## Best Interests of Child

[26] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs.* (*In re A.K.*), 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability[,] and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied.* "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, in addition to evidence that continuation of the parent-child relationship poses a threat to the children, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *L.S. v. Ind. Dep't of Child Servs.* (*In re A.D.S.*), 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied.*

[27] Again, Father's contentions on this issue amount to requests that we reweigh the evidence, which we will not do. Both the FCM and GAL testified that termination of Father's parental rights is in the Children's best interests. They

---

intoxicated so as to endanger others—which is one of the reasons Child was removed from Father in the first place—we believe the evidence would also support the trial court's finding that Father has not remedied the reasons for removal.

specifically emphasized Child's need for stability and Father's past inability—and probable future inability—to provide stability due to his pattern and history of incarceration. Moreover, there was evidence that Child is doing well in his placement with Grandmother and his biological sibling, and that Grandmother wished to adopt him. Given the evidence that Child needs stability, supervision, and care that Father did not provide in the past and cannot now provide, we hold that the totality of the evidence supports the trial court's conclusion that termination is in Child's best interests.

## Satisfactory Plan for Child

[28] Father purports to challenge the sufficiency of Child's permanency plan but, in fact, he merely reasserts his arguments that his relationship is not a threat to Child and that termination is not in Child's best interests. Because Father has presented no cogent argument as to how the permanency plan for Child is not satisfactory, he has waived that issue on appeal. Ind. Appellate Rule 46(A)(8); *see also, e.g.*, *Maraman v. City of Carmel*, 47 N.E.3d 1218, 1223 (Ind. Ct. App. 2015), *trans. denied*.[5]

[29] Waiver notwithstanding, the evidence clearly established that DCS has a satisfactory plan for Child's care and treatment. Such a plan "need not be

---

[5] In his Summary of the Argument, Father contends in a cursory fashion that he was "not afforded 'all reasonable efforts' at reunification." Appellant's Br. at 17. However, Father provides no citation to authority or the record, nor does he provide any cogent argument regarding this assertion; indeed, he fails to even mention this assertion again. Therefore, it is waived. *Id*.

detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d at 268 (citing *Jones v. Gibson Cty. Div. of Family and Children* (*In re B.D.J.*), 728 N.E.2d 195, 204 (Ind. Ct. App. 2000)). Here, the plan was for Child's adoption by Grandmother, who had been caring for Child for over two years at the time of the termination hearing. The FCM and GAL testified that Child was happy and doing well in his placement with Grandmother, that Grandmother's home was appropriate and safe for Child, and that one of Child's biological sibling also lived with Grandmother. Thus, the evidence supports the trial court's conclusion that adoption by Grandmother is a satisfactory plan, and that conclusion is not clearly erroneous.

# Conclusion

[30] The trial court did not clearly err when it terminated Father's parental rights to Child.

[31] Affirmed.

Crone, J., and Brown, J., concur.